## CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Prevette

v.

Curtis F. Owen et al.

July 19, 1985

By JUDGE EDWARD W. HANSON, JR.

The issue presented is whether those provisions calling for payments of sums certain in paragraph 4 of the Second Addendum to the contract between the parties are to be considered as liquidated damages or penalties.

In the two Virginia cases of *Stony Creek Lumber Company v. Fields and Company*, 102 Va. 1 (1903), and *Crawford v. Heatwole and Hedrick*, 110 Va. 358 (1909), the Supreme Court of Virginia addresses the issues of this case. In *Crawford*, the court quotes Earl J., in *Kemp v. Knickerbocker Ice Co.*, 69 N.Y. 45 (1877), as follows:

> The question whether a sum named in a contract to be paid for a failure to perform shall be regarded as stipulated damages or a penalty, has been frequently before the courts, and has given them much trouble. The cases cannot all be harmonized, and they furnish conspicuous examples of judicial efforts to make for parties wiser and more prudent contracts then they have made for themselves. Courts of law have, in some cases, assumed the functions of courts of equity, and have relieved parties of forced and unnatural constructions from stipulations highly penal. Where an amount stipulated as liquidated damages would be grossly in excess of the actual damages, they have leaned to hold it a penalty. Where the actual damages

were uncertain and difficult of ascertainment, they have leaned to hold the stipulated amount to have been intended as liquidated damages. No form of words has been regarded as controlling. But the fundamental rule, so often announced, is that the construction of these stipulations depends, in each case, upon the intent of the parties as evidenced by the entire agreement construed in the light of the circumstances under which it was made.

In *Stony Creek*, the Court quotes the opinion by Mr. Justice Agnew in *Streeper v. Williams*, 48 Pa. 450 (1865), as follows:

Upon the whole, the only general observation we can make is, that in each case we must look at the language of the contract, the intentions of the parties as gathered from all its provisions, the subject of the contract, and its surroundings, the ease and difficulty of measuring the breach in damages, and the sum stipulated, and from the whole gather the view which good conscience and equity ought to take of the case.

22 Am. Jur. 2d, *Damages*, § 227, also addresses the issue: Provisions for fixed per diem payments for delay in performance of a contract or for failure to complete performance within a specified time are usually construed as stipulations for liquidated damages, and not as penalties, where the actual damages are uncertain or difficult of ascertainment and where the stipulated sum is a reasonable estimate of probable damages or is reasonably proportionate to actual damages.

After an analysis of the evidence, the Court finds the best evidence is expressed in the series of correspondence introduced as Defense Exhibit 1, that correspondence between Mr. Bowerman and Robert B. Lindemann, Esq., including handwritten proposals from defendant, Curtis F. Owen. In his March 9, 1983, letter, Mr. Lindemann speaks of a bond in the amount of $50,000 to guarantee performance. Mr. Bowerman responds on May 3, 1983, with an offer of five separate $1000.00 promissory notes. Mr. Lindemann replies on May 12, 1983, indicating the value of the

work performed to be $50,000, but if the value of the work is $30,000 and can be "verified by an estimate of another reputable contractor who would be willing to do the work for that amount of money, then we would be willing to reduce the amount of the notes to reflect the corrected amount." Mr. Bowerman replies, May 24, 1983, "and the figure your client has selected is way out of line with the actual cost of performing the work specified." Mr. Lindemann responds May 26, 1983, the pertinent parts as follows: "providing the value of the work to be performed on the buildings is the only real stumbling block in our path to a satisfactory solution of this matter;" and "If Mr. Owen takes issue with the figure Mr. Prevette has established as the value of the work to be performed, then I respectfully suggest that Mr. Owen suggest a figure which in his opinion is more realistic. It is certainly true that, pursuant to the terms of the contract, Mr. Owen was required to perform the renovation of the buildings; consequently, it is only a question of what the fair value would be for that work. Mr. Prevette is willing to negotiate this amount provided it represents some reasonable figure relative to the actual costs that would be involved in accomplishing the work. Please advise as soon as possible what your client believes is the 'actual cost of performing the work specified'." Mr. Lindemann's next letter of June 16, 1983, purports to respond to Mr. Bowerman's letter of June 9, 1983, which is not in evidence. In the June 16th letter, Mr. Lindemann writes: "If the proposed contractor were to come up with a figure which closely resembles Mr. Owen's estimate, then the total amount needed to secure Mr. Prevette would be as follows:

| | |
|---|---|
| 1. The balance in rent | $ 5,000.00 |
| 2. The fair value of the work to be done (Mr. Owen's estimate) | 7,292.16 |
| Total | $ 12,292.16 |

The ensuing correspondence reflects a further narrowing of the positions of the parties, with Mr. Lindemann's proposal in his letter of July 8, 1983, being substantially adopted in the final draft of the Second Addendum to the contract, an amount very close to that expressed in the June 16, 1983, letter.

It is clear from this evidence that initially the actual prospective damages would be uncertain or difficult to ascertain. It is equally clear that the negotiations of the parties led to a stipulated sum agreed to be a reasonable estimate of probable damages in the event of default. Construing the agreement of the parties from the evidence of the intent at the time the agreement was made, I find the provision in question to provide for liquidated damages. Quoting the language of *Stony Creek*, I find this to be the view which good conscience and equity ought to take of the case.